UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS WILLIAMS,

    Plaintiff,                         Case No. 06-11312

v.                                       District Judge Paul D. Borman
                                        Magistrate Judge R. Steven Whalen

DEBORAH A. RIES, et. al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

On March 30, 2006, Plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), filed a *pro se* civil rights complaint under 42 U.S.C. §1983, naming as Defendants Corrections Officer Deborah Ries; MDOC Inspector Cynthia Acker; Assistant Resident Unit Manager (ARUM) Penny Landrum; and Grievance Coordinator Larry McMillan. Before the Court is Defendants' Motion for Summary Judgment [Docket #60], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that Defendants' Motion be GRANTED and the complaint DISMISSED WITH PREJUDICE.

        **I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that on October 22, 2003, Defendant Ries, a correctional officer at the Southern Michigan Correctional Facility (JMF), acting on the instruction of Defendant Acker, an inspector, confiscated 105 letters and 200 photographs from his prison cell. *Complaint* at ¶8. Plaintiff states that he was issued a Notice of Intent to Conduct a Hearing (NOI) form and a contraband removal form. *Id.* at ¶9. He claims that neither Ries or Acker gave him a reason for confiscating apparently non-contraband material or informed him of

-1-

the charges against him, which he alleges left him unable to prepare a defense for the hearing *Id*. at ¶10. He filed a grievance against Ries on October 31, 2003, submitting it to Defendant McMillan, a grievance coordinator. *Id.* at ¶12. However, McMillan returned the grievance to Plaintiff unprocessed, with a note stating that he did not believe that Plaintiff had given Acker enough time to resolve the complaint on an informal basis. *Id.* at ¶¶13-14. Plaintiff refiled his grievance against Ries on November 4, 2003, which was denied at Step I of the grievance procedure on November 18, 2003. *Id.* at ¶15. On November 6, 2003, Plaintiff had filed a second grievance, this time against grievance coordinator McMillan, based on his refusal to process the original grievance against Ries. *Id.* at ¶17.

On December 2, 2003, Acker sent a memo[1] to Defendant Landrum, stating that all of the confiscated material should be returned to Plaintiff with the exception of six letters and one envelope. The memo also directed that a hearing be held. *Id*. at ¶18-20. On December 8, 2003, before a hearing was provided, the MDOC transferred Plaintiff to Ojibway Correctional Facility (OCF). *Id*. at ¶21-22. On January 17, 2004, Assistant Resident Unit Supervisor (ARUS) Derry, a non-defendant at the Chippewa Correctional Facility, returned to Plaintiff 99 out of the 105 confiscated letters and 153 of the 200 confiscated photographs. *Id.* at ¶23-24.[2]

In substance, the Complaint raises three constitutional claims:

1. That Defendants Ries and Acker violated his right to procedural due process by

---

[1] The memo was in email form. *See* Defendants' Exhibit D, Attachment 1 (email from Acker to Landrum, dated December 2, 2003)

[2] Plaintiff's previous Complaint in Case No. 05-70432, raising essentially the same factual and legal claims, was dismissed without prejudice based on lack of exhaustion of administrative remedies. The previous Complaint alleged, at ¶¶25-27, that on January 17, 2004, ARUM Derry conducted the hearing on the N.O.I. at the Chippewa Correctional Facility prior to returning the Plaintiff's property.

depriving him of notice and hearing with regard to the confiscation of his property. (Claims I and IV).

2. That Defendant McMillan violated his First Amendment right of access to the courts by not processing his grievance against Ries and Acker. (Claim II).

3. That Defendant Landrum violated the First Amendment by retaliating against him for filing grievances, by ordering his transfer to a prison camp in the remote and desolate Upper Peninsula of Michigan (Claim III).

The Defendants have submitted affidavits and other material with their Motion for Summary Judgment. Larry Brown, an MDOC Inspector who is not a Defendant, states by affidavit that in October of 2003, staff at the Riverside Correctional Facility (RCF) became suspicious that an RCF employee "was involved in an inappropriate and overly-familiar relationship with the plaintiff." *Brown Affidavit*, Defendants' Exhibit C. Based on this information, he asked Defendant Acker, an Inspector at the Southern Michigan Correctional Facility (JMF), to search Plaintiff's cell for "any evidence related to an inappropriate relationship with an RCF staff member." *Id.* On October 30, 2003, he received hand-written letters and envelopes confiscated from Plaintiff's cell. Around November 13, 2003, he confirmed the identity of the staff member, and advised Acker to delay the hearing on the NOI, so as not to jeopardize the investigation. *Id.*

Defendant Acker states that as part of an investigation into an inappropriate relationship between the Plaintiff and a staff member, she ordered a search of Plaintiff's cell, which was conducted by Defendant Ries. The correspondence and photographs that were confiscated were turned over to Acker on or about October 29, 2003. *Acker Affidavit*, Defendants' Exhibit D. However, Acker did not conduct the search, and she did not issue the NOI. *Id.* Acker states that on October 30, 2003, she forwarded the confiscated material

to Inspector Brown at RCF. On November 13, 2003, Brown informed her that he had identified the staff member, and he asked that the hearing on the NOI be delayed in order to preserve the integrity of the investigation. *Id.* On December 2, 2003, Acker emailed Defendant Landrum, instructing Landrum to "conduct the Notice of Intent hearing and to return all confiscated correspondence to plaintiff, with the exception of six letters and one envelope determined to be contraband based on staff over-familiarity." *Id.* The email indicated that the envelope was empty. *Id.*, Attachment 1. Acker states that she also instructed Landrum to return the photographs to the Plaintiff. *Acker Affidavit*. She states that on December 12, 2003, she learned that Plaintiff had transferred to the Ojibway Correctional Facility (OCF) before the hearing on the NOI was conducted. She mailed Plaintiff's non-contraband property (correspondence and photographs), along with the NOI, to OCF, with "instructions as to the disposition of the correspondence/photographs and that all were to be returned to plaintiff with the exception of 6 letters and 1 empty envelope which were determined to be contraband based on staff over-familiarity." *Id.*, ¶ 11. She instructed that OCF could "now conduct the hearing on the NOI." *Id.*, Attachment 1.

Defendant Ries states that she conducted the search of Plaintiff's cell on October 28, 2003, not on October 22, as Plaintiff alleges. *Ries Affidavit*, Defendants' Exhibit E. She conducted the search under the direction of Inspector Acker, confiscating approximately 105 letters and 200 photographs. *Id.* The NOI and Contraband Removal Record both note "Hold pending investigation." Exhibit E, Attachments 1 and 2.

Defendant McMillan was a Grievance Coordinator at JMF. *McMillan Affidavit*, Defendants' Exhibit F. In his affidavit, he details the actions he took with respect to several of Plaintiff's grievances, including a grievance dealing with the October 22 (October 28?) confiscation of property. McMillan returned this grievance to the Plaintiff on November 4,

2003, because Plaintiff had not given Inspector Acker enough time to respond to his request of October 30, 2003. *Id.*

Defendant Landrum was an Assistant Resident Unit Supervisor (ARUS) at JMF. It was she to whom Inspector Acker directed the December 2, 2003 email regarding the return of Plaintiff's property. However, Landrum states, "I have no recollection of receiving this e-mail or Ms. Acker's December 12, 2003 handwritten note on the e-mail copy." *Landrum Affidavit*, Defendant's Exhibit G. Landrum agrees that she "did not conduct the [NOI] hearing, as instructed by Inspector Acker," but that she could not do so because the Plaintiff was transferred to OCF on December 8, 2008, before the hearing could be done. *Id.* She also states that she did not write the transfer order. *Id.*

The NOI hearing on the six confiscated letters was held in October of 2007, approximately four years after they were confiscated. The Administrative Hearing Report is attached as Defendant's Exhibit H, and states that the six letters–correspondence between Plaintiff and a former MDOC employee–were found to be prohibited contraband:

> "It has been determined that the six (6) items/letters are violations of PD 04.07.112, Prisoner Personal Property and PD 05.03.118, Prisoner Mail. the mail, when received, was from an unauthorized source and was a threat to the security, good order and discipline of the facility. NOTE: the correspondence between prisoner Williams and a person that was formally employed by the Michigan Department of Corrections was prohibited as determined by the investigation completed by Inspector L. Brown." Defendant's Exhibit H.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.

*Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. ANALYSIS
#### A. Due Process/Confiscation of Property

In Claims I and IV, Plaintiff alleges violation of Due Process regarding the confiscation of his property. I construe his claims as including challenges to Defendants Ries's and Acker's failure to give him pre-deprivation notice of the reasons for confiscating

his property, and for not affording him either a pre-deprivation or timely post-deprivation hearing.[3]

To the extent that the Plaintiff had a legitimate property interest in the letters and photographs that were confiscated from him, he had a corresponding procedural due process right to notice and hearing regarding the deprivation of that property. *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ([T]he Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property"). Nevertheless, due process "is a flexible concept that varies with the particular situation." *Id.; Goss v. Lopez*, 419 U.S. 565, 579, 98 S.Ct. 729, 42 L.Ed.2d 725 (1975) (at a minimum, due process requires "*some* kind of notice and...*some* kind of hearing"). (Emphasis in original).

Normally, a pre-deprivation hearing is required. However, where there are exigent circumstances, a timely post-deprivation hearing may satisfy due process. In *Flatford v. City of Monroe,* 17 F.3d 162, 167 (6th Cir. 1994), the Court held, "A prior hearing is not constitutionally required where there is a special need for very prompt action to secure an important public interest and where a government official is responsible for determining ...that it was necessary and justified in a particular instance." *Flatford* also held that where a confiscation occurs under these circumstances, a defendant may be shielded by qualified immunity, "particularly where post-deprivation remedies can immediately correct any errors in judgment." In *Thomas v. Cohen*, 304 F.3d 563, 577 (6th Cir. 2002), the Court, citing *Flatford*, held that where property is confiscated based on exigent circumstances or

---

[3] The pleadings of a *pro se* litigant are to be liberally construed. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

important government interests, there must be "an immediate and meaningful post-deprivation administrative process."

The Defendants have shown a valid reason for not conducting a pre-deprivation hearing. An inmate's constitutionally protected rights, including his Due Process property rights, must be balanced against the institution's need to maintain security and order within the prison. In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern. *See also Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir.2003). Here, pre-deprivation notice and hearing would have jeopardized an investigation into a serious breach of prison regulations and security by an MDOC staff member who was alleged to have maintained an inappropriate and overly familiar personal relationship with the Plaintiff. Thus, the denial of a pre-deprivation hearing was "rationally related to a legitimate penological concern," and cannot support the claimed constitutional violation. *Turner v. Safely, supra; Flatford v. City of Monroe, supra*.

There are two aspects to the claimed denial of a timely post-deprivation hearing. The first involves the six letters that were determined to have been contraband. On December 2, 2003, a little over a month after the letters were confiscated and shortly after Inspector Brown's investigation was concluded, Defendant Acker wrote the email directing Defendant to conduct the NOI hearing. Plaintiff was transferred six days later, on December 8, 2003, so the hearing was not conducted at JMF. Under *Flatford* and *Thomas v. Cohen, supra*, a

post-deprivation hearing held shortly after Plaintiff arrived at the new institution would have been sufficiently timely to satisfy Due Process concerns, given the ongoing investigation in October and November, and the fact of Plaintiff's transfer.

However, the NOI hearing on the six letters was in fact not conducted until October of 2007, four years after the confiscation. Defendant's Exhibit H (Administrative Hearing Report). While Defendant is correct that there is no precise, bright-line rule as to the timing of a post-deprivation hearing, there comes a point where a delay is so excessive as to implicate the Due Process Clause. In *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 564 (6th Cir. 1983), the Sixth Circuit stated, "[A]t some point delay in post-termination hearings may constitute a constitutional violation. Due process requires that a hearing be held, not just 'in a meaningful manner', but also at a 'meaningful time.'" And again, *Thomas v. Cohen*, 304 F.3d at 577, citing *Flatford*, admonished that there must be "an immediate and meaningful post-deprivation administrative process." By no measure does an unexplained four-year delay satisfy the Due Process requirement that a hearing be held within a "meaningful time."

Nevertheless, Plaintiff's Due Process claim as to these six letters fails because he simply does not have a constitutionally protected property interest or liberty interest in possessing contraband. *See Steffey v. Orman,* 461 F.3d 1218, 1221 (10th Cir.2006) ("An inmate does not have a property interest in possessing contraband"); *Lyon v. Farrier,* 730 F.2d 525, 527 (8th Cir.1984) (noting that a prison inmate "cannot seriously argue" that he has a protected property interest in contraband destroyed as such by prison officials). Plaintiff did not have a right, under valid prison regulations, to possess the six contraband letters: no property interest, no Due Process violation.

As to the non-contraband letters and photographs that Inspector Acker ordered

returned, Plaintiff stated in his previous Complaint (Docket No. 05-70432) at ¶¶25-27, that on January 17, 2004, ARUS Derry conducted the hearing on the N.O.I. at the Chippewa Correctional Facility prior to returning the his property. Given that Plaintiff was transferred on December 8, 2003, holding the hearing approximately five weeks later is not so significant a delay as to offend the Due Process Clause, and fits comfortably within the parameters of *Flatford* and *Thomas*.

To the extent that Plaintiff is alleging that some of the non-contraband material–photographs, for example–were not returned to him following the hearing, his remedy does not lie in this Court. In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that a Due Process claim would be subject to dismissal "if (1) the deprivation was unpredictable or 'random,' (2) pre-deprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property." In *Ruiz v. Fisher*, 1998 WL 661139, *5 (6th Cir. 1998) (unpublished), the Sixth Circuit explained:

> "To the extent that Ruiz claims either an intentional or negligent deprivation of a property interest, he has failed to state a claim. A negligent or unintentional deprivation of property is not actionable under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986). In cases involving an intentional deprivation of property, a plaintiff may not bring a § 1983 suit claiming a denial of procedural due process if adequate state remedies exist. *Hudson v. Palmer,* 468 U.S. 517, 533-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending *Parratt v. Taylor,* 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to intentional property deprivations). Furthermore, the plaintiff must both plead and prove that state remedies for redressing the wrong are inadequate. *Vicory v. Walton,* 721 F.2d 1062, 1065-66 (6th Cir.1983)."

If MDOC personnel withheld or lost Plaintiff's non-contraband property, not through the application of prison policy, but negligently, or even intentionally, the *Parratt* doctrine precludes his Due Process claim. Furthermore, as in *Ruiz*, Plaintiff has neither pled nor proved that state remedies provide inadequate redress.

Accordingly, Plaintiff's Due Process claims (Claims I and IV) should be dismissed.

### B. First Amendment/Access to Courts

Plaintiff claims that by not properly processing his administrative grievance against Ries and Acker, Defendant McMillan denied him his right of access to the courts, since exhaustion of administrative remedies is a requirement of the Prison Litigation Reform Act (PLRA). (Claim II).

Prison inmates have a constitutionally protected right of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). In *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Plaintiff has not shown any prejudice to his litigation as the result of anything Defendant McMillan did or did not do. In fact, on February 23, 2007, I issued a Report and Recommendation that Defendants' motion to dismiss based on non-exhaustion be denied, based on the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) [Docket #27]. The Report & Recommendation was adopted on March 29, 2007 [Docket #32]. Plaintiff's First Amendment claim should be dismissed.

### C. Retaliation

Plaintiff claims that Defendant Landrum retaliated against him for filing grievances, by ordering his transfer to Ojibway. (Claim III).

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  There is no dispute that filing a grievance is protected conduct, so Plaintiff has satisfied the first element.

Plaintiff's transfer to a different institution is generally not considered an adverse action.  A prisoner has no constitutional right to be confined in any particular institution, *see Meachum v. Fano*, 427 U.S. 215, 224-25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  But even if Plaintiff did meet the second prong of *Thaddues-X*, he has not shown a causal relationship between his filing a grievance and being transferred. That the latter occurred after the former does not create an ineluctable inference of causality.  Moreover, Defendant has submitted documentation showing that Landrum herself did not authorize the transfer.  In her affidavit she states,  "The transfer order was clearly prepared by the Transfer Coordinator, C. Hunt, and not by me."  Defendant's Exhibit G, ¶ 8.  The transfer order itself, Exhibit G, Attachment 1, bears this out.  It is signed by C. Hunt and Assistant Deputy Warden Richard Cody.

Plaintiff's claim of retaliation should therefore be dismissed.

### IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Docket #60] be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed  within ten (10)

days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 29, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 29, 2008.

S/G. Wilson
Judicial Assistant